**IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BARBARA FERKEL and ADRIENNE GREEN-KATIEN, individually and on behalf of all similarly situated persons, | ) ) ) Case No. ) |
| Plaintiffs, | ) Judge ) |
| v. | ) Magistrate Judge ) |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, a body politic and corporate and, Henry Beinen, Jean-Claude Brizard, Mahalia Hines, Jesse Ruiz, Penny Pritzker, Rod Sierra, David Vitale and Andrea Zopp, members of the Board of Education, in their official capacities, | ) JURY TRIAL DEMANDED ) ) ) ) ) ) ) ) |
| Defendants. | |

## COMPLAINT

Plaintiffs Barbara Ferkel ("Ms. Ferkel") and Adrienne Green-Katien ("Ms. Green-Katien") (collectively, "Plaintiffs"), by and through her attorneys, Robin Potter & Associates, P.C., and on behalf of themselves and all other similarly situated persons complain against Defendant Board of Education of the City of Chicago ("Board" or "Defendant Board" or "BOE") and its members as follows:

## NATURE OF THE CASE

1. Ms. Ferkel and Ms. Green-Katien bring this action on behalf of themselves and a class of similarly situated employees against their former employer, the Board and its officers to redress acts of unlawful termination, breach of contract and age discrimination.

Ferkel-Green Complaint.final.wpd
December 30, 2011/rbp

2. Ms. Ferkel and Ms. Green-Katien, both tenured Chicago Public School ("CPS") teachers, were terminated from their employment because of their age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*; in violation of their constitutional due process rights under 42 U.S.C. §1983 and in breach of their employment contracts. Each claim is brought herein as a class claim.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4).

4. Venue is proper in this judicial district under 29 U.S.C. §1391 because Defendants reside in this district and a substantial part of the events giving rise to plaintiffs' claims occurred in this district.

## PARTIES

5. Ms. Ferkel is an adult female citizen who at all relevant times, resided within the territorial jurisdiction of the District Court. She was an "employee" within the meaning of the ADEA. 29 U.S.C. § 630(f)

6. Ms. Ferkel was born in 1946 and is currently 65 years old.

7. Ms. Ferkel was employed as a CPS teacher for 19 years until terminated by defendants in August 2010.

8. Adrienne Green-Katien is an adult female citizen who at all relevant times, resided within the territorial jurisdiction of the District Court. She was an "employee" within the meaning of the ADEA. 29 U.S.C. § 630(f).

9. Ms. Green-Katien was born in 1943 and is currently 68 years old.

10. Ms. Green-Katien was employed as a CPS teacher with the Board since 1993, and at Ames Middle School since 1998 until her termination in August of 2010.

11. Defendant Board and its officers were at all relevant times "employers" within the meaning of the ADEA. 29 U.S.C. § 630(b).

12. Defendant Board is an educational employer within the meaning of Section 2(a) of the Illinois Educational Labor Relations Act, 115 ILCS 5/2(a), and is the entity charged by law with maintaining a free school system within the City of Chicago. It maintains offices at 125 South Clark Street, 6th Floor, Chicago, Illinois 60603.

13. Plaintiffs fulfilled all conditions precedent to the institution of this action under the ADEA.

14. Plaintiffs filed charges with the Equal Employment Opportunity Commission ("EEOC") on December 23, 2010 and April 21, 2011, respectively. They received a Right to Sue from the EEOC on or about October 5, 2011. The Right to Sue Letter is attached hereto as Group Exhibit "A."

## FACTS

**Barbara Ferkel**

15. Ms. Ferkel began working for the Board in 1991 as a teacher and in administrative positions.

16. Throughout her employment, Ms. Ferkel performed the duties and responsibilities of her position in a satisfactory manner and met or exceeded all legitimate expectations.

17. Throughout her employment Ms. Ferkel received ratings ranging from Excellent to Superior on her professional evaluations. These are the two highest ratings a CPS teacher can receive.

18. Ms. Ferkel held a position on an administrative team until 2005, at which time she was placed in a classroom to teach reading, language arts and writing workshop. In approximately 2009, Ms. Ferkel was transferred to Ames Middle School, teaching Social Studies.

19. In 2009, Thomas Hoffman ("Hoffman") became the principal at Ames.

20. On October 22, 2009, the Board adopted the Middle Grades Specialization Policy, attached hereto as Exhibit B. The Policy required that students in grades 6 - 8 receive instruction in language arts, mathematics, science and social studies from teachers who either (1) possess a middle grades content endorsement in those subjects or (2) through the school year 2010-2011 only, have been authorized by the State of Illinois to teach those middle grade content areas pending completion of required course work.

21. On October 23, 2008, then CPS Chief Executive Officer Arne Duncan, sent a letter to CPS teachers stating the Board had adopted a Middle Grade Specialization Policy and reiterated that all middle school teachers would be required to have proper middle school endorsements no later than the 2011-2012 school year. See Duncan Letter, attached hereto as Exhibit C.

22. Ms. Ferkel holds a middle grade endorsement in social studies. Upon the date of her termination, Ms. Ferkel was one credit hour away from receiving a middle grade endorsement in language arts and intended to complete her endorsement before

the end of the 2010-2011 school year.

23. During the 2009-2010 school year, Ames principal Hoffman assigned Ms. Ferkel to teach a seventh grade science class. Ms. Ferkel did not hold an endorsement to teach Middle School Science, however she taught the class effectively and received positive feedback from Hoffman during her annual review.

24. On February 18, 2010, Ms. Ferkel submitted paperwork to the Board confirming she planned to retire on June 30, 2011. Retirement on that date would allow Ms. Ferkel to retire with twenty (20) years of service, thus substantially increasing the pension and other benefits to which she was entitled. Hoffman received copies of this paperwork and was aware of Ms. Ferkel's retirement date.

25. On February 18, 2010, Ms. Ferkel submitted an application to participate in the CPS Pension Enhancement Program ("PEP") to CPS' Department of Human Resources. Participation in the PEP would allow Ms. Ferkel to receive a payout for the sick days she had accrued. Retirement with twenty (20) years of service would allow Ms. Ferkel to cash in all her 123.5 sick days. Retiring with less than twenty (20) years of service would allow Ms. Ferkel to cash in only 40.5 sick days.

26. On or in April or May of 2010, one of Ms. Ferkel's students was disruptive and had to be removed from her classroom by Principal Hoffman. Hoffman told Ferkel that she was "too motherly" to the students. Ms. Ferkel understood this to be a comment about her age.

**Adrienne Green-Katien**

27. Ms. Green-Katien was employed as an art teacher with the Board beginning in 1993.

28. Throughout her employment, Ms. Green-Katien performed the duties and responsibilities of her position in a satisfactory manner and met or exceeded all legitimate expectations.

29. Throughout her employment, Ms. Green-Katien received ratings ranging from Excellent to Superior on her professional evaluations – the two highest ratings a CPS teacher can receive.

30. In 1998 Ms. Green-Katien transferred to a position teaching art at Ames.

31. During the 2009-2010 school year, Ames Principal Hoffman gave Ms. Green-Katien a "Satisfactory" rating, despite never conducting a formal observation of Ms. Green-Katien's classroom or engaging her in the post-observation meeting required under the collective bargaining agreement governing Ms. Green-Katien's work.

32. During her evaluation, Ms. Green-Katien advised Hoffman she would be retiring after the 2010-2011 school year. Ms. Green-Katien chose that date to retire because she would have twenty (20) years of service with the Board, which would substantially increase her pension and other benefits.

**Facts Common to all Similarly Situated Teachers**

33. On June 23, 2010, the media began reporting that Ron Huberman ("Huberman"), then CEO for Chicago Public Schools, and the Board had decided to layoff and "honorably terminate" teachers whom defendants labeled as unsatisfactory. Huberman made these announcements publicly on June 23, 2010 and thereafter. Huberman's comments were widely repeated and published by a number of media outlets. A sampling of those published statements are attached hereto as Group Exhibit "D."

34. Huberman's statements that the honorably terminated teachers were unsatisfactory are false.

35. On August 10, 2010, Ms. Ferkel and Ms. Green-Katien each received a phone call from Ames Principal Hoffman informing them they were being honorably terminated from CPS effective August 31, 2010 due to something called "Redefinition."

36. Ms. Ferkel asked Hoffman if she was being terminated because she did not have more than one middle grade endorsement. Hoffman answered affirmatively.

37. A few days later, Ms. Ferkel, Ms. Green-Katien and eight (8) other Ames teachers received certified letters from CPS' Office of Human Capital advising that their positions were not longer available due to something titled "Redefinition" and they would be honorably terminated effective August 31, 2010. See Exhibit E, attached hereto.

38. Of the ten (10) teachers who received termination letters at Ames, at least half were over the age of forty (40).

39. Of the ten (10) teachers who received termination letters at Ames, two teachers who were under the age of forty (40) and substantially younger and less senior than other terminated teachers were contacted and re-hired by Hoffman. The newly re-hired teachers were assigned classes that the more senior and tenured teachers were qualified to teach.

40. None of the more senior and tenured teachers were re-hired and none were offered the opportunity to apply for open positions at Ames.

41. Ames Principal Hoffman closed the art department at Ames for one half of the 2010-2011 school year. In the second half of the school year, he reopened the program and hired a new art teacher who, upon information and belief, is substantially younger than Ms. Green-Katien.

42. Ms. Green-Katien was not contacted or invited to apply for the reopened position.

43. The Board and its officers have failed to comply with the Illinois School Code, which contains provisions that apply to any reduction in force. 105 ILCS 5/34-18(31). Those provisions mandate the Board make individual determinations as required by 105 ILCS 5/34-18(31) to issue rules to ensure individualized consideration of education and employees based on the qualifications, certifications and experience, and to ensure they are retained.

44. The seniority and reassignment rights of teachers also exists by virtue of past practice under the collective bargaining agreement (the "labor agreement") between the Board and the Chicago Teachers Union, Local 1 ("CTU").

45. Appendix H to the labor agreement requires that tenured teachers with appropriate certifications will be selected for retention based on seniority. Appendix H to the Agreement is attached hereto as Exhibit "F." The Agreement's provisions give teachers the right to layoff by seniority and reassignment where appropriate.

46. Subsequent to the adoption of the labor agreement, the Board issued a set of regulations ensuring that layoffs would be conducted by seniority and qualifications, and that teachers would be placed in a system-wide reassigned teacher pool to avoid dismissal. In addition, while in the pool teachers could secure open

positions at CPS for which they were qualified.

47. The system wide seniority process is consistent with Article 42-2 and Appendix H is set out in the rules and regulations relating to layoffs and is titled "Reassignment and Layoff of Regularly Certified and Appointed Tenured Teachers."

48. In 1995, the General Assembly of Illinois authorized the Board to promulgate rules for layoffs and reductions in force, which are included in 105 ILCS 5/34-18 (31). Such rules expressly require the Board to consider criteria that include, but are not limited to, the "qualifications, certifications, experience, performance ratings or evaluations" of the teachers who are affected by a reduction in force.

49. 105 ILCS 5/34-18(31) specifically states that the Board shall "promulgate rules establishing procedures governing the layoff or reduction in force of the employees and the recall of such employees, including, but not limited to, criteria for such layoffs, reductions in force or recall rights of such employees and the weight to be given to any particular criteria. Such criteria shall take into account factors including, but not be limited to, qualifications, certifications, experience, performance ratings, or evaluations, and any other factors relating to employee's job performance."

50. On June 15, 2010 the Board passed a resolution authorizing the "honorable termination" of tenured teachers, like Ms. Ferkel, Ms. Green-Katien and other Ames teachers.

51. Teachers laid off pursuant to the Board's June 15, 2010 resolution were not provided with an opportunity to demonstrate their qualifications for retention in some capacity within the school system.

52. This opportunity has been recognized by this Court to be a due process right to which tenured Board teachers are entitled and has ruled "honorable dismissals," like the one to which Ms. Kelley was subjected, to be illegal. See *Chi. Teachers Union, Local No. 1, AFT v. Bd. of Educ. of Chi. v. Bd. of Educ.*, 2010 U.S. Dist. LEXIS 105715 (N.D. Ill. Oct. 4, 2010), affirmed in part and clarified by *Chi. Teachers Union, Local No. 1, AFT v. Bd. of Educ. of Chi.*, 640 F.3d 221, 2011 U.S. App. LEXIS 6395, 190 L.R.R.M. (BNA) 2577 (7th Cir. Ill. 2011); vacated on rehearing at and question certified by *Chi. Teachers Union, Local No. 1 v. Bd. of Educ.*, 2011 U.S. App. LEXIS 11977, 190 L.R.R.M. (BNA) 3243 (7th Cir. Ill. June 13, 2011), attached hereto as Exhibit "G".

### COUNT I
### (ADEA: Age Discrimination)

53. Plaintiffs restate and reallege paragraphs 1-52 as if fully set forth herein.

54. Defendants intentionally subjected Plaintiffs and a class of similarly situated employees who were laid off in the summer of 2010 to unequal and discriminatory treatment by singling them out for termination and denying them the right to re-apply or be reinstated because of their age in violation of the ADEA 29 U.S.C. §§ 621 *et seq.*

55. Defendants' actions are in violation of the ADEA and were willful.

56. Defendants' actions in intentionally discriminating against Plaintiffs have caused Plaintiffs lost wages and benefits, pecuniary losses, and other consequential damages.

**WHEREFORE,** Plaintiffs pray this court enter judgement on their behalf and against Defendant for damages including, but not limited to:

    A.    All wages and benefits that they would have received but for the discrimination, including pre-judgement interest;
    B.    Reinstatement, or in the alternative, an award of front pay;
    C.    Liquidated damages, under the ADEA;
    E.    Post-judgement interest;
    F.    To be made whole for the damages and financial losses suffered;
    G.    Certify this count as a class action;
    H.    Attorneys' fees and all costs and expenses of suit; and
    I.    Such other and further relief as this Court deems appropriate and just.

## COUNT II
### (Section 1983: Deprivation of Due Process Rights)

57.    Plaintiffs restate and reallege paragraphs 1-56 as if fully set forth herein.

58.    Plaintiffs were entitled to exercise their constitutional right to due process before the Board and its officers deprived them of their property right in tenured employment.

59.    The Board and its officers have caused the summary dismissal of tenured teachers, like Ms. Ferkel and Ms. Green-Katien, without giving any individualized consideration under of the qualifications, certifications, experience, performance ratings or evaluation, or any other factor relating to an employee's job performance as required by 105 ILCS 5/34-18(31).

60.    Without the individual determinations required by 105 ILCS 5/34-18(31), the Board has denied the constitutional rights of Plaintiffs to notice and an opportunity to be heard as to why they are qualified to be retained or to exercise their right to procedural due process under the Fourteenth Amendment.

**WHEREFORE,** Plaintiffs pray this court enter judgement on their behalf. and against Defendants for damages including, but not limited to:

    A.    Declare that in violation of 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment of the United States Constitution, the Board

    and its officers have denied Plaintiffs their constitutional rights to individualized determination as to whether they meet specific weighted criteria, which the Board should have but failed to apply under 105 ILCS 5/34-18(31), and thereby denied Plaintiffs their right to procedural due process, including notice and an opportunity to be heard.

B. Make Plaintiffs whole for the damages and financial losses suffered, including punitive and compensatory damages;
C. Certify this count as a class action;
D. Award attorneys' fees and costs; and
E. All other relief that this Court deems necessary and just

## COUNT III

### (Breach of Contract: Common Law)

61. Plaintiffs restate and reallege paragraphs 1-60 as if fully set forth herein.

62. Defendant promised and agreed to maintain status quo regarding middle grade specialization through July 2011 and provide Plaintiffs until that date to complete all middle grade specialization endorsements.

63. Defendants' promises created a contract between plaintiffs and defendants.

64. Plaintiffs accepted defendants' terms and took appropriate steps to obtain middle grade specialization endorsements.

65. Defendants' to terminate Ms. Ferkel and other similarly situated teachers as a result of their lack of middle grade endorsements constitutes a breach of the contractual promises set forth in the Board's October 22, 2008 resolution and Arne Duncan's October 23, 2008 letter to teachers.

66.    Plaintiffs were damaged as a result of defendants' breach.

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following relief:

    A.    Order defendant to make Plaintiffs whole;
    B.    Certify this Count as a class action;
    B.    Order defendant to pay Plaintiffs prejudgment interest on all recovery and all reasonable court costs; and
    C.    Grant Plaintiffs such other relief as this Court deems just and equitable.

### JURY DEMAND

Plaintiffs hereby respectfully demand a jury trial.

        Respectfully submitted,

        ROBIN POTTER & ASSOCIATES, P.C.

        /s/ Robin Potter
        One of Plaintiffs' Attorneys

Robin Potter, Esq. ARDC # 3123932
M. Nieves Bolanos, Esq. ARDC # 6299128
ROBIN POTTER & ASSOCIATES, P.C.
111 E. Wacker Dr., Suite 2600
Chicago, IL 60601
(312) 861-1800
robin@potterlaw.org
nieves@potterlaw.org