**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BARBARA FERKEL,** *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 11 C 9322 |
| | ) | |
| v. | ) | District Judge Edmond E. Chang |
| | ) | |
| **BOARD OF EDUCATION OF THE CITY OF CHICAGO** | ) | Magistrate Judge Daniel G. Martin |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant's Motion for Reconsideration [169] is granted in part.

## STATEMENT

Defendant Board of Education of the City of Chicago ("the Board" or "Defendant") has brought a motion to reconsider the Court's March 7, 2014 order on Plaintiff Barbara Ferkel's and the other named Plaintiffs' ("Ferkel" or "Plaintiffs") Amended [Third] Motion to Compel, and the Court's April 1, 2014 oral ruling concerning the Fourth Motion to Compel. The Board brought the instant motion on April 29, nearly two months after the Court's original ruling.

Shortly after Plaintiffs filed their initial response brief, District Judge Chang issued a ruling on Defendant's Motion to Dismiss. *Ferkel v. Bd. of Educ. of City of Chicago*, — F. Supp.2d —, 2014 WL 2209004 (N.D. Ill. May 28, 2014). Judge Chang dismissed Plaintiffs' breach of contract claim and limited their due process claims to Section 34-84 of the Illinois School Code. That provision gives tenured teachers a property interest in continued employment. Teachers can only be terminated under Section 34-84 for good cause, and

only if certain procedures are followed. By contrast, teachers laid off because of economic reasons are not entitled to such due process. Plaintiffs allege that their dismissal was based on their performance, and that the Board's reliance on a budgetary crisis was merely a pretext for denying them these procedural guarantees. Judge Chang described the remaining due process issue in clear terms: "Plaintiffs . . . bear the burden of actually proving that the Board really terminated them for exclusively performance-based reasons and not because of the budgetary crisis." *Ferkel*, — F. Supp.2d —, 2014 WL 2209004, at *8.

The District Court's ruling affected what was already a protracted and highly-contested discovery dispute. This Court agreed fully with Judge Chang's admonition that the parties should "carefully consider how to conduct reasonable and cost-effective discovery" on the limited due process issue. *Id*. The pending Motion for Reconsideration did not address this concern because it preceded the District Court's ruling. The Court therefore instructed the parties to meet and confer in order to narrow their differences. Unfortunately, they reported only limited success at the June 20 status hearing. The parties requested until July 21 to submit additional briefing on their respective positions. They now agree on some issues. Wide-ranging differences remain on others.

## **Legal Standard**

Motions for reconsideration are appropriate under a limited number of circumstances. These include where: (1) the court has clearly misunderstood a party; (2) the court has strayed outside the issues presented by the parties; (3) a significant and controlling change in the law has subsequently occurred; or (4) a significant change in the

2

relevant facts has taken place. *See Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). New evidence or new arguments that could have been presented earlier are not a basis for seeking reconsideration. "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of a previous motion." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004).

## Discussion

### Request No. 23

Document Request No. 23 sought "policies, guidelines, instructions, memos, etc. which apply to CPS and the Board's implementation or monitoring of Board Policy 08-10-22PO1 titled Middle Grades Specialization." The Court granted a limited range of production on this issue in its earlier order.

The District Court's dismissal of Plaintiffs' claim under the Middle Grades Specialization ("MGS") policy makes Request No. 23 overly broad as it currently stands. Plaintiffs contend that it is still relevant. They point out that Defendant has admitted that Plaintiffs Ferkel, Otero, and Saporito "may" have been dismissed for reasons related to the MGS policy. (Second Amend. Response to Int. No. 17). Plaintiffs claim that the MGS documents could be relevant for showing that Defendant's reliance on the MGS policy was a pretext for age discrimination. Plaintiffs propose limiting the scope of Request No. 23 to communications between (1) Principal Hoffman and the Board, and (2) "CPS or Board officials, management and Board departments."

Defendant does not oppose the production of communications *to* Hoffman. For

reasons that are unclear, however, the Board claims that communications *from* Hoffman are inappropriate. The Court disagrees. Principal Hoffman was the decision maker for the teacher terminations at Ames Middle School. MGS-related communications from Hoffman to other Board employees could yield evidence concerning his motive for dismissing Ferkel, Otero, and Saporito. Such evidence, if it exists, could be relevant to a pretext argument.

The Court does not consider the issue at greater length because Defendant has not addressed this portion of Plaintiffs' amended response in meaningful detail. The Board claims that Plaintiffs' discussion of the pretext issue in their previous briefing was "nonsensical and disingenuous." (Reply at 4). The Board's reasoning, however, only relates to the issuance of Short Term Authorizations. It is not clear that is the only issue at stake in Plaintiffs' current version of their request. More importantly, Defendant did not raise this argument in its original response brief. (Doc. 149 at 14). It cannot do so now. *Ahmed*, 388 F.3d at 249.

The Board also directs the Court to Ferkel's EEOC charge and claims that she did not administratively exhaust her remedies. Defendant failed to raise this issue as well when it first opposed Plaintiffs' request. (Id.). Ferkel clearly alleged age discrimination in the charge. (Doc. 27-2). The Board may be complaining that Ferkel did not raise all of her pretext arguments before the EEOC. The cases cited by the Board do not support the proposition that a litigant must administratively assert every aspect of the burden-shifting analysis that applies to age and employment discrimination claims. That issue is beyond the scope of the current motion.

This Court expresses no opinion on the likelihood that Plaintiffs will find the type of evidence they seek. However, their claim is not implausible on its face. The possibility that

discovery on this limited range of communications could yield relevant information is all that is required to meet the liberal standard that applies to discovery. *In re IKB Deutsche Industriebank AG*, 2010 WL 1526070, at *5 (N.D. Ill. April 8, 2010) (stating that discovery is ordinarily allowed even "[i]f there is a *possibility* that [it] may lead to information relevant to the subject matter of the action") (emphasis added); *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 577 (N.D. Ill. 2004) ("If relevance is in doubt, courts should err on the side of permissive discovery.").

The Board objects that granting this request expands the Court's original order. That is true to some degree. But the Board claims that it has already turned over the documents that it now objects to producing. *See* Reply at 7 ("[T]he Board has already produced all MGS-related communications exchanged between Principal Hoffman and other board employees."). If that is the case, then Defendant's production obligation on this issue has been completed. Defendant shall produce any remaining responsive documents that may exist.

That said, the Court agrees with Defendant that Plaintiffs' second set of proposed limitations is overly broad and unlikely to lead to admissible evidence. Plaintiffs have not shown how intra-Board or inter-departmental MGS communications could be relevant to a pretext analysis. Only Hoffman's acts and intent are directly relevant to the named Plaintiffs and other Ames Middle School teachers who were terminated. Moreover, Defendant has explained the specific burdens that would be imposed on it in conducting the investigation that would be required to respond to Plaintiffs' request. Defendant raised this issue in its earlier response brief, though it did not explain it in much detail. The Court agrees that the burdens of producing these documents outweigh the potential relevance

they would have to Plaintiffs since they no longer have a MGS due process claim. Defendant's motion is granted on these terms.

**Request No. 24**

Request No. 24 sought:

> All policies, guidelines, instructions, notes, emails, memos, etc., to or from any principal, any employee within CPS' Human Capital Department, or any other person, including Karen Bertucci relating to CPS teachers' achievement of middle grade specialization and/or endorsements pursuant to [the MGS policy].

In their response to Plaintiffs' amended motion, Defendant claimed that it would be unduly burdensome to inspect the email communications of its 589 principals. The Court implicitly agreed and limited the request to communications *from* the Human Capital Development office to principals and to Karen Bertucci. The Court also struck the phrase "any other person" from Plaintiffs' request. This left only the Human Capital Department, its employees, and Karen Bertucci. The Court also directed Defendant to produce communications related to a passage quoted in Plaintiffs' motion, as well as to a paragraph cited in Plaintiffs' Exhibit E. The terms of these communications are laid out in the Court's March 7, 2014 order.

Defendant's earlier brief did not raise any objection to discovery related to the Human Capital Department. (Doc. 149 at 15). The Board now claims for the first time that even the limited discovery that remains as part of the document request is too burdensome to proceed: the Human Capital Department includes 248 employees; some of these individuals are no longer employed; and it would take 248 hours, plus intensive review, to gather and prepare documents for production.

All of these claims should have been brought when Defendant first responded to Plaintiffs' motion. Litigants are not even permitted to rehash old arguments, much less present new ones, in a motion for reconsideration. *See Bally Export Corp. v. Balicar, Ltd*., 804 F.2d 398, 400 (7th Cir. 1986) (stating that court orders may not be treated "as mere first drafts, subject to revision and reconsideration at a litigant's pleasure"); *Finnsugar Bioproducts, Inc. v. Amalgamated Sugar Co., LLC*, 244 F. Supp.2d 890, 891 (N.D. Ill. 2002). Moreover, it is difficult to imagine that all 248 departmental employees could be equally relevant to answering Request No. 24. The department presumably has core members whose emails would be far more responsive than those of every single employee. Defendant has not identified the department's structure, its managerial members, or any other factor that could be reasonably be used to narrow the scope of inquiry.

Fortunately, the Court does not need to decide whether or not to address Defendant's new argument in full. Plaintiffs have proposed limiting Request No. 24 to communications from the Human Capital Department *to* Principal Hoffman. Defendant agrees to do so. It objects, however, to providing Hoffman's responses to any identified communications. The Court rejects this objection for the reasons stated above.

The Court agrees with Defendant that the remaining parts of the earlier order should be revised. The Court directed Defendant to produce documents related to an email that was attached as Exhibit E to Plaintiffs' amended motion, part of which was quoted on pages 13 and 14 of the motion. This involved communications related to Short Term Authorizations and annual progress concerning the MGS policy. Plaintiffs now offer to limit the scope of their earlier request to communications concerning teachers at Ames Middle

School.  Unlike their other requests, however, Plaintiffs do not contend that this set of communications is related to a pretext analysis.  Plaintiffs only state that these documents are relevant "regarding Ames Middle School teachers."  (Resp. at 6).

These generalized allegations are not sufficient to demonstrate relevance. Plaintiffs have not explained how their request fits the streamlined set of claims that survive the District Court's order.  The burden for demonstrating that point rests with Plaintiffs, not the Court.  They have also failed to state why this set of documents would reveal relevant information that could not also be found in communications to and from Hoffman.  The Board's production of Hoffman's MGS-related emails will presumably include any written communication he had about teachers at Ames that relate to the MGS policy.

Part of the Court's order on Exhibit E involved Karen Bertucci's MGS emails. Plaintiffs continue to demand these documents despite the fact that the Board does not object to producing them.  Indeed, Defendant states that it turned over 12,749 responsive pages on May 22, 2014.  The Board even specifies the Bates-labels of these documents and offers to produce them to the Court for review.  The Court accepts Defendant's highly-specific representation.

Plaintiffs are silent on the issue.  Their amended response does not mention this production, explain what Plaintiffs' review of it revealed, or argue that it is so inadequate that even more documents should be turned over.  Plaintiffs cannot demonstrate that they are entitled to additional discovery on the MGS policy and Ames teachers without first addressing these issues.  The time for doing so is now.  The Court will not require Defendant to respond further to any part of Exhibit E without a more specific showing of relevance and an explanation of why Defendant's current production is inadequate.  The

motion is granted on this issue.

The Board asks the Court to order Plaintiffs to return all of these Bertucci-related emails. It is not clear at this time that Bertucci's emails have no relevance at all to Plaintiffs' remaining claims. Defendant is given leave to raise the issue after Plaintiffs have had more opportunity to review the documents. Until then, the Bertucci emails remain subject to the confidentiality order entered in the case.

### Request No. 25

Defendant also asks the Court to reconsider its ruling on Request No. 25, which asked for all communications related to the creation of "Department Reduction" documents. This request is not at issue because the Court denied Plaintiffs' motion to compel concerning Request No. 25.

### The April 1, 2014 Order

Finally, Defendants also oppose this Court's April 1, 2014 order concerning the discovery related to 273 teachers who were potentially subject to the MGS policy. The order modified the Court's earlier rulings on Document Request Nos. 26 and 27 and Interrogatory No. 17. The Court agrees that the information at issue in the April 1, 2014 is no longer relevant in light of the District Court's ruling. The Court's April 1, 2014 order is hereby vacated as it concerns this issue.

### Conclusion

This order completes all discovery issues stemming from Plaintiffs' motion that was originally filed in September 2013. These proceedings have included an amended motion, a renewed motion to compel, multiple court hearings, the instant motion, and the District

Court's ruling. The parties are directed to move forward with completing the discovery encompassed by this order. They shall meet and confer prior to the status set for August 14 to agree on a date by which Defendant will have complied with the Court's ruling.

**ENTER**:

_____
**Daniel G. Martin
United States Magistrate Judge**

DATE: August 8, 2014.